UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| HEATHER D. HERRON, (Social Security No. XXX-XX-9174), Plaintiff, | ) | |
| v. | ) | 3:09-cv-2-WGH-RLY |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, Defendant. | ) | |

**MEMORANDUM DECISION AND ORDER**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 11, 13) and an Order of Reference entered by District Judge Richard L. Young on April 22, 2009 (Docket No. 17). On October 26, 2009, the Magistrate Judge heard oral arguments, at which Plaintiff was represented by counsel, Mike Woods and John Worman, in person, and Defendant was represented by counsel, Henry Kramzyk, by telephone.

**I. Statement of the Case**

Plaintiff, Heather D. Herron, seeks judicial review of the final decision of the agency, which found her not disabled and, therefore, not entitled to Supplemental Security Income ("SSI") benefits under the Social Security Act

("the Act"). 42 U.S.C. § 1381(a); 20 C.F.R. § 404.1520(f). The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff applied for SSI on May 3, 2005, alleging disability since December 10, 2002.[1] (R. 66-68). The agency denied Plaintiff's application both initially and on reconsideration. (R. 46-48, 50-53). Plaintiff appeared and testified at a hearing before Administrative Law Judge Augustus C. Martin ("ALJ") on July 11, 2008. (R. 733-68). Plaintiff was represented by an attorney; also testifying was a vocational expert ("VE"). (R. 733). On August 25, 2008, the ALJ issued his opinion finding that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform a significant number of jobs in the regional economy. (R. 10-19). The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 2-4). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on January 9, 2009, seeking judicial review of the ALJ's decision.

## II. Vocational Profile

Plaintiff was 28 years old at the time of the ALJ's decision and had a limited education. (R. 18-19). Her past relevant work experience included work

[1]Plaintiff filed a previous application for SSI on June 25, 2003. (*See* R. 25). After a hearing, ALJ George Mills found that Plaintiff was not disabled in a decision dated April 5, 2005. (R. 25-33). The Appeals Counsel affirmed the ALJ's decision, and Plaintiff did not take any further action. (*See* R. 10). Thus, the principle of *res judicata* applies, and Plaintiff's period of disability can begin no earlier than April 6, 2005.

as a cashier, housekeeper, and companion/sitter, each of which is classified as unskilled with light/medium exertional demands. (R. 18).

## III. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

## IV. Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V. The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the application date. (R. 12). The ALJ found that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had five impairments that are classified as severe: fibromyalgia, degenerative disc disease, borderline intellectual functioning, depression, and post-traumatic stress disorder. (R. 12). The ALJ concluded that these impairments did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13).

Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of her limitations were not fully credible. (R. 15). Consequently, the ALJ concluded that Plaintiff retained the RFC for a limited range of sedentary work that included: an option to sit or stand at will for comfort; occasional stooping and crouching; no concentrated exposure to moving machinery and unprotected heights; and performance of only simple routine tasks. (R. 14). The ALJ opined that Plaintiff could not perform her past work. (R. 18). However, the ALJ opined that Plaintiff retained the RFC for a significant number of jobs in the regional economy. (R. 18). The ALJ concluded by finding that Plaintiff was not under a disability. (R. 19).

## VI. Issues

Plaintiff has raised four issues. The issues are as follows:

1. Whether there is substantial evidence that there are a significant number of jobs in the regional economy that Plaintiff can perform.

2. Whether the ALJ improperly failed to give controlling weight to the opinions of Plaintiff's treating physicians.

3. Whether the ALJ's credibility determination is patently wrong.

4. Whether the ALJ failed to consider the cumulative effects of Plaintiff's medications.

**Issue 1: Whether there is substantial evidence that there are a significant number of jobs in the regional economy that Plaintiff can perform.**

Plaintiff argues that the Social Security Administration has the burden at step five of the five-step sequential evaluation process to demonstrate that there are a substantial number of jobs in the regional economy that Plaintiff can perform. As discussed above, once the Plaintiff has carried her burden of demonstrating that she cannot perform any of her past work, the burden then shifts to the Social Security Administration to demonstrate that Plaintiff is able to perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520; *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). As the Seventh Circuit has explained, "because an ALJ's findings must be supported by substantial evidence, an ALJ may depend upon expert testimony only if the testimony is reliable." *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004). Additionally, SSR 00-4p requires the ALJ to inquire about any possible conflicts between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT") and to elicit reasonable responses for any discrepancy. If the VE's testimony appears to conflict with the DOT, then the ALJ "will obtain a reasonable explanation for the conflict." *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)(quoting SSR 00-4P).

In this case, based on the testimony of VE Frank Kern, the ALJ determined that Plaintiff could perform the jobs of sorter (which included 1,600 jobs in the regional economy), hand packager (800 regional jobs), and bench

assembler (1,600 regional jobs). (R. 19). The ALJ noted that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT), except the DOT does not address the option to sit or stand at will. The vocational expert's testimony in that regard is based on his professional experience." (*Id.*).

After Plaintiff filed her brief arguing that the ALJ's decision was not supported by substantial evidence, the Commissioner filed its Memorandum in Support of the Commissioner's Decision and explained that "[p]ursuant to the DOT, the hand packager and bench assembler jobs are not performed at the sedentary exertional level," essentially conceding that the testimony of the VE was not consistent with the DOT. (Defendant's Memorandum in Support of the Commissioner's Decision at 17). Despite this admitted elimination of 60 percent of the jobs that the VE testified Plaintiff could perform, the Commissioner argues that there is still substantial evidence to support the decision of the ALJ at step five.

The Commissioner asks the court to speculate that, when the VE testified that Plaintiff retained the RFC to perform 1,600 "sorter" jobs, the VE was likely referring to three subcategories of sorter jobs remaining that *do* conform to Plaintiff's RFC of sedentary work, including 209.687-022 sorter (clerical),

521.687-086 nut sorter, and 770.687-014 diamond sizer and sorter.[2] (*Id.*) In the entry scheduling a hearing on this matter, the Magistrate Judge noted that questions remained regarding whether or not these three subcategories of sorter jobs actually did meet Plaintiff's RFC. (Order Setting Oral Argument at 2-3). Specifically the Magistrate Judge noted:

> As for the three sub-categories of sorter jobs Defendant now asks the Court to consider, there are serious concerns about each of them. First, the job of diamond sizer and sorter carries a specific vocational preparation ("SVP") level of 4 which requires over three months and up to six months of training to learn. However, Plaintiff's RFC is limited to "simple routine tasks" (R. 14), which clearly does not include jobs that take three months to learn. Second, the job of nut sorter requires exposure to conveyor belts which does not conform to Plaintiff's RFC which includes "no exposure to moving machinery." (R. 14). Third, the Court notes that the clerical sorter job involves primarily tasks that today would be completed on a computer, and it is possible that the job described no longer exists.

(*Id.*) At the hearing, the Commissioner essentially conceded that the job of diamond sizer and sorter did not conform to Plaintiff's RFC. Also, at the hearing the Commissioner responded to the Magistrate Judge's concerns about the nut sorter job by arguing that the exposure to conveyor belts was not the type of exposure to moving machinery that the ALJ was referring to in his RFC finding.

Based on the evidence in the record and the arguments of the parties, as well as the Commissioner's concessions regarding the jobs of hand packager,

---

[2]The Commissioner appears to have focused on these three subcategories because they were the only subcategories of sorter jobs that remotely met Plaintiff's RFC. There were at least 21 other subcategories of sorter jobs that did not meet Plaintiff's RFC for sedentary work.

bench assembler, and diamond sizer and sorter, the Magistrate Judge concludes that the decision of the ALJ at step five is not supported by substantial evidence. There was clearly a conflict in the VE's testimony and the DOT. The VE testified that an individual with Plaintiff's RFC for sedentary work could perform the jobs of hand packager and bench assembler, but those jobs are not performed at the sedentary level. Also, of the subcategories of "sorter" that the Magistrate Judge has been able to find, it appears that 21 of the 24 subcategories also clearly are not performed at the sedentary level. Furthermore, the Magistrate Judge is concerned about the remaining three subcategories of sorter jobs that are performed at the sedentary level and is unwilling to speculate that these were the types of sorter jobs that the VE was contemplating that Plaintiff could perform.

Hence, there appears to have been enough of an "apparent conflict" between the testimony of the VE and the DOT that the ALJ was obligated to inquire further into these conflicts. *See Overman v. Astrue*, 546 F.3d 456, 462-64 (7th Cir. 2008). The ALJ's failure to resolve such clearly obvious conflicts between the VE's testimony and the DOT requires remand because the ALJ's decision is not supported by substantial evidence.

**Issue 2: Whether the ALJ improperly failed to give controlling weight to the opinions of Plaintiff's treating physicians.**

Next, Plaintiff argues that the ALJ failed to give controlling weight to the opinions of her treating physicians and gave too much weight to nonexamining state agency physicians. Opinions of a treating physician are generally entitled

to controlling weight. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000). However, an ALJ may reject the opinion of a treating physician if it is based on a claimant's exaggerated subjective allegations, is internally inconsistent, or is inconsistent with other medical evidence in the record. *Dixon v. Massanari,* 270 F.3d 1171, 1177-78 (7th Cir. 2001). Additionally, 20 C.F.R. § 404.1527 provides guidance for how the opinions of treating and nontreating sources are to be evaluated and explains as follows:

> (d) *How we weigh medical opinions.* Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) *Examining relationship.* Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) *Treatment relationship.* Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) *Length of the treatment relationship and the frequency of examination.* Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) *Nature and extent of the treatment relationship.* Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) *Supportability.* The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) *Consistency.* Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) *Specialization.* We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) *Other factors.* When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

*****

(f) *Opinions of nonexamining sources.* We consider all evidence from nonexamining sources to be opinion evidence. When we consider the opinions of nonexamining sources, we apply the rules in paragraphs (a) through (e) of this section. In addition, the following rules apply to State agency medical and psychological consultants, other program physicians and psychologists, and medical experts we consult in connection with administrative law judge hearings and Appeals Council review:

(1) In claims adjudicated by the State agency, a State agency medical or psychological consultant (or a medical or psychological expert (as defined in § 405.5 of this chapter) in claims adjudicated under the procedures in part 405 of this chapter) will consider the evidence in your case record and make findings of fact about the medical issues, including, but not limited to, the existence and severity of your impairment(s), the existence and severity of your symptoms, whether your impairment(s) meets or equals the requirements for any impairment listed in appendix 1 to this subpart, and your residual functional capacity. These administrative findings of fact are based on the evidence in your case record but are not themselves evidence at these steps.

20 C.F.R. § 404.1527.

Plaintiff alleges that the ALJ failed to give appropriate weight to treating physicians Dr. McFadden and Dr. Lewis. First, as to Dr. McFadden, the ALJ stated in his opinion as follows:

> Additionally, the claimant's representative interviewed Dr. McFadden on July 16, 2008 (Exhibit 1F-614). Dr. McFadden opined that his conclusions of the claimant's limitations, made in 2003 and 2004, were still accurate, however the undersigned finds that this evidence has already been evaluated and weighed in the prior decision. Dr. McFadden further opined that the claimant would have to lie down for two hours at a time for two or three days per week and her pain was severe enough to interfere with her ability to concentrate. The undersigned gives little weight to Dr. McFadden's opinion as his treatment notes indicate that the claimant was stable and her functional status was excellent in 2008 (Exhibit 1F-511).

(R. 17).

The decision does not specifically discuss factors listed in 20 C.F.R. § 404.1527. Instead, the decision refers to just one visit and does not discuss the other numerous office visits that Plaintiff had with Dr. McFadden. It should be noted that the one record the ALJ referred to is located at R. 218 and that one record also reveals that Plaintiff's "routine pain medications consist[ed] of Methadone 10 mg 4 times a day, Percocet 7.5 mg twice a day, and Lortab 10 mg 4 times a day for breakthrough pain . . . ." (R. 218). This is a strong regiment of oral medications. Despite strong medications, the doctor agreed to reschedule Plaintiff for her epidural steroid injections "at her request." (R. 218). This also indicated treatment for significant pain.

The ALJ also likely misconstrued the use of the physician's phrase: "her functional status is excellent." The remainder of the sentence states "although she has had some increased sedation since we started her on Lyrica a few months ago." (R. 218). It is not clear if Dr. McFadden is referencing her physical abilities or her mental limitations as a result of the strong regiment of oral

medications that were described in the preceding sentence of the doctor's record. The court concludes that the ALJ did not properly assess the medical records of Dr. McFadden.

As for the opinions of treating family physician Dr. Lewis, the ALJ states:

> The claimant's representative interviewed Dr. Lewis on July 9, 2008 (Exhibit 1F-606). Dr. Lewis concurred with Dr. McFadden's opinion of the claimant's limitations as of September 9, 2003, stating that the claimant's condition had not changed significantly since that time. The undersigned gives little weight to Dr. Lewis [sic] conclusions as this evidence has already been considered by Judge Mills in the his [sic] decision dated April 4, 2005. Dr. Lewis further opined that the claimant's medications would cause a sedative effect and combined with her low IQ scores, pain, and depression, the claimant would not be able to stay focused on simple repetitive tasks for a normal 8-hour workday and she would be absent from work more than two days per month. Dr. Lewis also diagnosed the claimant with mental retardation, based on her past IQ scores. The undersigned gives little weight to Dr. Lewis' conclusions concerning the claimant's mental functioning as it is based primarily on the doctors' [sic] interpretation of the claimant's IQ scores and the doctor is not a psychiatrist, nor has he administered a mental status examination. Furthermore, his opinion is not consistent with the findings and opinions of examining psychological experts in the record.

(R. 17).

Again, the ALJ does not make specific reference in his opinion to the factors found at 20 C.F.R. § 404.1527. In this case, Dr. Lewis' interview of July 9, 2008 (R. 122) does spend some time discussing Plaintiff's intellectual status. The ALJ here adequately discusses why the fact that Dr. Lewis is not a psychiatrist and does not administer examinations caused the ALJ to doubt Dr.

Lewis' conclusions. As to Dr. Lewis, the court concludes that the ALJ did not err in giving his opinion less weight than other doctors.

**Issue 3: Whether the ALJ's credibility determination is patently wrong.**

Plaintiff also argues that the ALJ conducted a flawed analysis of her credibility. An ALJ's credibility determination will not be overturned unless it is "patently wrong." *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). However, here the ALJ's "credibility" decision is not only an analysis of Plaintiff's credibility, but also an evaluation of Plaintiff's complaints of pain. Therefore, the ALJ must consider SSR 96-7p, the regulation promulgated by the Commissioner to assess and report credibility issues, as well as 20 C.F.R. § 404.1529(c)(3).

SSR 96-7p states that there is a two-step process that the ALJ engages in when determining an individual's credibility:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the

> individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, *the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.* This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4). These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

SSR 96-7p (emphasis added). SSR 96-7p further provides that the ALJ's decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate

pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In this case, the ALJ recited to the appropriate standards (R. 14) and examined Plaintiff's credibility during a lengthy discussion (R. 15-18). The ALJ relied on evidence from Dr. Lewis to determine that Plaintiff's activities of daily living were inconsistent with her complaints of debilitating symptoms. (R. 15). The ALJ reasonably credited Dr. Gable's records which showed that Plaintiff "dropped out of treatment," and that Dr. Gable determined that Plaintiff was "malingering." (R. 17, 142). The ALJ also reasonably considered records from Dr. Lewis which state that Plaintiff "was not really hurting anywhere, but she was angry all of the time and crying." (R. 16, 173). This was a reasonable credibility determination conducted by the ALJ, and the Magistrate Judge cannot say that it was "patently wrong." Therefore, the credibility determination will not be disturbed.

**Issue 4: Whether the ALJ failed to consider the cumulative effects of Plaintiff's medications.**

Plaintiff also argues that the ALJ failed to consider the cumulative effects of Plaintiff's medications in his RFC finding. Because the Magistrate Judge has previously determined that remand is required for further evaluation of Plaintiff's

treating physician's opinions, a detailed analysis of this issue is not necessary at this time. The ALJ's decision did recite to the correct standard for the evaluation of pain. (R. 14). He did also discuss the fact that Plaintiff was taking strong narcotic medications (R. 16), and otherwise discussed her use of medications. On remand, a more explicit discussion of the effects of the medications would be helpful, but there is no explicit error requiring remand within the ALJ's opinion addressing Plaintiff's RFC and credibility.

## VII. Conclusion

While much of the ALJ's decision is proper, the court cannot trace the path of the ALJ's reasoning as to whether there are jobs available in the regional economy which Plaintiff is able to perform. Additionally, the ALJ failed to properly discuss all of the records of Dr. McFadden and establish why the treating physician's opinions should not be given controlling weight. The decision of the Commissioner is, therefore, **REMANDED** for these purposes.

**SO ORDERED** the 8th day of January, 2010.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

J. Michael Woods
WOODS & WOODS
mwoods@woodslawyers.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov